UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THOMAS RANDALL WILSON                                                      PLAINTIFF

VERSUS                                                    CIVIL ACTION NO. 1:14CV17-RHW

CHRISTOPHER EPPS et al                                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

Thomas Randall Wilson, proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging that prison officials failed to provide him adequate medical treatment for injuries received during an altercation with another inmate at South Mississippi Correctional Institution (SMCI).  Doc. [1].  At a screening hearing conducted before the undersigned on April 30, 2014, Wilson affirmed that his complaint is based on delayed and/or inadequate medical care for a shoulder injury and staph infection.  Doc. [44-1] at 9. Defendants have filed motions for summary judgment, which are now before the Court.  Docs. [41] & [44].  As will be discussed below, there is no genuine issue of material fact regarding whether Defendants provided him with constitutionally adequate medical care.  Wilson has otherwise failed to state a claim with respect to his other constitutional claims;  therefore, the Court finds that the motions for summary judgment should be granted.

In his complaint, Wilson alleged that on June 20, 2013, he was involved in an altercation with another inmate.  Doc. [1] at 4.  As a result, he injured his shoulder and sustained cuts and scrapes on his legs and elbow.  *Id.* at 7.  He alleges that Defendants did not provide him with adequate medical treatment.  *Id.*  Wilson alleges that he developed an antibiotic-resistant staph infection from these injuries, though at the screening hearing, Wilson stated that the infection is

"dormant".  Doc. [44-1] at 23.  Wilson also alleged that he wrongfully received a Rules Violation Report (RVR) as a result of the altercation on June 20, 2013; however, Wilson admitted at the screening hearing that he appealed the RVR through the Administrative Remedies Program (ARP) and that the RVR was expunged from his file.  *Id.* at 9-10.  Hence, Wilson does not have any constitutional claim with respect to the RVR.

## Law and Analysis

Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial." *See Celotex,* 477 U.S. at 323 (quoting *Topalin v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992)).  In making its determinations of fact on a motion for summary judgment, the court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).  The moving party has the duty to demonstrate the lack of a genuine issue of a material fact and the appropriateness of judgment as a matter of law to prevail on its motion.  *Union Planters Nat'l Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The moving party accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.  Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence.  *Ferguson v.*

*Nat'l Broad. Co., Inc.,* 584 F.2d 111, 114 (5th Cir. 1978).

Although there are multiple defensive theories raised by Defendants in their motions for summary judgment, the undersigned finds that Wilson's complaint should be dismissed as to all claims and all defendants because he has failed to demonstrate a genuine issue of material fact with respect to his central claim of inadequate medical care. To state a constitutional claim for denial of adequate medical care, Plaintiff must demonstrate that Defendants were deliberately indifferent to Plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999). Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Wilson alleges that he did not receive adequate treatment for a shoulder injury and for staph infections that developed from scrapes and cuts. The injuries allegedly resulted from an altercation that occurred on June 20, 2013. According to the medical records, Wilson completed a sick call request regarding his shoulder which he dated June 21, 2013, although he did not mention an altercation with an inmate in the medical request form. Doc. [46] at 328 & 676. Rather, Wilson indicated that he was seeking medical treatment for "ongoing problems" with his bones, joints, and right shoulder. *Id.* at 328. The prison medical department received Wilson's sick call request on June 27, 2013. *Id.* On July 1, 2013, the medical department examined

3

Wilson, at which time he indicated that he was involved in an altercation with another inmate. *Id.* at 676.  The medical department provided him with ibuprofen at that time.  *Id.*

On July 1, 2013, Wilson filled out a sick call request regarding a staph infection.  *Id.* at 327.  On July 4, 2013, the medical department examined sores on Wilson's thigh and elbow.  The examining nurse provided Wilson with an ointment (Bacitracin) and referred him to a doctor.  *Id.* at 678.  On July 8, 2013, the medical department again examined and treated Wilson for his infection.  *Id.* at 679-83.  Treatment for his infection continued throughout the months of July and August 2013, with numerous record entries referring to the infection and its ongoing treatment.  *See id.* at 684-91, 703-23   On August 9, 2012, Dr. Woodall examined Wilson and ordered Gentamicin injections twice a day for three days and Bactrim for a week.  *Id.* 706-07.  On August 12, a nurse practitioner ordered Rocephin, an antibiotic.  He was also given Toradol, a pain medication, and Rifampin for recurrence in abscesses.  *Id*. 710-12.  On September 4, 2013, Wilson reported to the medical department that the infection almost all went away because of the antibiotic treatments.  *Id.* at 729-30.  An examination of that date revealed "no rash" on his skin.  *Id.* at 731.  At the screening hearing, Wilson conceded that he has been examined by several different medical providers and that he has been prescribed several different antibiotics in an attempt to treat his infection.  Doc. [44-1] at 14-18, 20-23.  Moreover, he conceded that the infection was benign or inactive at the time of the screening hearing.  *Id.* at 23.

With respect to his shoulder, Wilson stated that Dr. Woodall did not examine his shoulder.  *Id.* at 18.  Rather, Dr. McCleave (who has not been named as a defendant in this case) examined and treated his shoulder.  *Id.*  At the screening hearing, Wilson related an extensive history of treatment for his shoulder.  The medical department took an x-ray of the shoulder that

4

was negative. *Id.* at 19. Wilson stated that the medical department gave him a steroid injection approximately six days after the injury and prescribed prednisone tablets. *Id.* at 13-14, 18-19. Wilson indicated that he was still on pain medication at the time of the screening hearing. *Id.* at 23-24. A review of the medical records confirms this course of treatment. *See e.g.* Doc. [46] at 300, 676-77, 746-50, 777-79.

The medical records and the testimony of Wilson demonstrate that he received extensive treatment for the infection and for his shoulder injury. Although Wilson may disagree with the type of treatment and may be dissatisfied with the results of the treatment, he has not demonstrated deliberate indifference that would rise to the level of constitutionally inadequate medical care. To the contrary, the summary judgment evidence demonstrates that Wilson received medical attention and care for his shoulder injury and staph infection on an ongoing basis beginning shortly after he reported it to prison officials. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)("[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

To the extent that Wilson alleges claims against Defendants Christopher Epps, Gloria Perry, and Mike Hatten in their supervisory capacities, his claim is without merit. At the screening hearing, Wilson admitted that none of these three defendants was directly involved in his medical treatment. Rather, he sued each of them because they were supervisors. Doc. [44-1] at 24-26. Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). However, a supervisor may be held liable if there exists either (1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

conduct and the constitutional violation. *Id.* Plaintiff has not alleged any specific facts that would demonstrate that these defendants were personally involved in Plaintiff's alleged constitutional deprivation or that there was a causal connection between these defendants' actions and the alleged constitutional violation.

Wilson stated that he sued Defendant Joseph Cooley because he was the ARP investigator and Wilson apparently was dissatisfied with Cooley's investigation. Doc. [44-1] at 27. Wilson possesses no constitutional right to a grievance procedure and no due process liberty interest right to have his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005). Moreover, to the extent that Wilson alleges that any of the defendants failed to investigate his grievance adequately, such an allegation does not constitute a claim under § 1983. *Id.* at 374.

Wilson also indicated that Defendant Latasha Hurd failed to protect him from the assault by another inmate on June 20, 2013. Doc. [44-1] at 26. Wilson's failure-to-protect claim was asserted for the first time at the screening hearing and is not alleged anywhere in his complaint; therefore, the Court finds that the claim has not been properly pled. Regardless, Wilson fails to allege in any manner that Hurd was aware of the risk of an assault on Wilson by another inmate prior to the altercation. *See Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006). To the contrary, when questioned whether Hurd knew the attack was going to happen, Wilson responded: "I have no idea". Doc. [44-1] at 26. Accordingly, Wilson has failed to allege that Hurd possessed the requisite knowledge or that she acted with deliberate indifference.

Based on the foregoing, the Court finds that Defendants' motions for summary judgment should be GRANTED and that Plaintiff's complaint should be dismissed with prejudice as to all

claims and all Defendants.

SO ORDERED, this the 5th day of December, 2014.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE